# Michael Ehret, Jr., Appellant, *v.* George V. Gunn et al.

*Deed—Alley.*

Miller conveyed a portion of his land to another. The grantee of the purchaser divided it into lots and sold them to defendants. Miller subsequently laid out a twelve feet wide alley on his land on the side of one of defendants' lots. He afterwards conveyed the remainder of his land to plaintiff. In the deed to plaintiff the alley was recited as having been "laid out for the use of those lots, and the other lots bounding on said alley," and was described thus : "Together with the free use and privilege of the said alley as a passageway and water course, and for the use of horses, carts and carriages, in common with the said Hiram Miller, his heirs and assigns, owners, tenants, and occupiers of the other lots of ground bounding thereon, at all times hereafter forever." *Held,* that the defendants were entitled to the use of the alley.

A right of way appurtenant to land is appurtenant to every part of it, and if the owner divides it into several lots, the grantee of each lot, however small, has an equal right over the servient land.

Argued Jan. 31, 1895. Appeal, No. 33, Jan. T., 1895, by plaintiff, from decree of C. P. No. 4, Phila. Co., Dec. T., 1893, No. 311, for defendant, on bill in equity. Before GREEN, WILLIAMS, McCOLLUM, MITCHELL and FELL, JJ. Affirmed.

Bill to restrain use of alley.

The plan on the following page shows the situation of the alley:

The following opinion was filed by THAYER, P. J.:

"This case, which was heard on bill and answer, was brought to determine a controversy which has arisen between the plaintiff and the defendants relative to the right of the latter to the use of a certain twelve feet wide alleyway, which furnishes the only means of entrance to and exit from the rear of their several lots on Fifteenth street south of Allegheny avenue. If the defendants are cut off from the use of the alleyway they have no other means of entrance to or exit from the rear of their several properties, and everything brought into or carried out of their respective houses must go by the front door.

"It appears that one Hiram Miller was originally the owner of the whole property now belonging to the plaintiff and the defendants. He also owned the land in the rear of the plain-

tiff's lots, extending from Fifteenth to Sixteenth street, over which he laid out the twelve feet alley, now in dispute, before he made any conveyance to the plaintiff, and after he had conveyed to the grantor of the defendants. On August 2, 1872, Hiram Miller conveyed to Eli Hess a lot of ground on the

ALLEGHENY AVENUE.

SIXTEENTH STREET.

FIFTEENTH STREET.

M. EHRET, Jr

T. Dudley

G. V. Gunn

T. J. Taylor

Alley

N

CLEARFIELD STREET.

west side of Fifteenth street, two hundred feet south of Allegheny avenue, containing one hundred feet on Fifteenth street. This lot came subsequently, by several mesne conveyances, to George V. Gunn, who cut it up into five smaller building lots, three of which he conveyed to Thomas Dudley, one to Thomas J. Taylor, and retained one for himself. Subse-

quent to the conveyance to Hess, Hiram Miller laid out a
twelve feet wide alley on the south of the lot conveyed to
Hess, bordering on the Hess property, and running back from
Fifteenth street to the rear of Ehret's property, which fronts
on Allegheny avenue.   This alley was recited in the deeds to
the plaintiff for the lots on Allegheny avenue (which were
conveyed to the plaintiff by Miller by two deeds, dated respec-
tively May 19, 1882, and June 13, 1883), as having been 'laid
out for the use of those lots and the other lots bounding on
said alley,' and is described in the plaintiff's deed thus:
'Together with the free use and privilege of the said alley as
a passageway and water course, and for the use of horses, carts,
and carriages, in common with the said Hiram Miller, his heirs
and assigns, owners, tenants, and occupiers of the other lots of
ground bounding thereon, at all times hereafter forever.'   The
lithographic plan attached to the plaintiff's bill shows very
clearly the location of the twelve feet wide alley thus laid out
by Miller for the accommodation of the several lots bounding
upon it.

  " The plaintiff contends that, inasmuch as Miller's convey-
ance to Hess was made anterior to the laying out of the twelve
feet alley, neither Hess nor any of the subsequent grantees
claiming under him have any right to the use of the alley.   I
cannot agree with the plaintiff in this contention.   I think it
is clear that it was the intention of Miller when he laid out the
twelve feet alley that all the properties bounding upon it should
have the use of it.   It is so declared in the plaintiff's deeds
from Miller, where it is explicitly stated that the alley was laid
out for the lots granted to Ehret, ' and the other
lots bounding on said alley,' and the grant to Ehret in both
deeds is, ' with the free use and privilege of said alley, in com-
mon with the said Hiram Miller, his heirs and assigns, owners,
tenants, and occupiers of the other lots of ground bounding
thereon.'   It makes no difference, in my opinion, that Hess,
who was one of the ' assigns, owners, tenants, and occupiers of
the other lots of ground bounding thereon,' derived his title by
assignment from Miller before the way was laid out, for it was
the plain intention of Miller in laying out the alley to reserve
the use of it for all who owned lots bordering upon it.   It was
competent for Miller, as owner of the land, to dedicate it to the

use of all owners whose lots bordered upon it, whether their titles originated before or after the laying out of the alley, and that he intended to do so is, I think, plain from the language used in the deeds, which is of the broadest description, 'for the use of the lots granted and the other lots bounding on said alley,' which means all lots bounding thereon. To undertake to restrict the grant to the subsequent grantees of Miller would 'be, in my opinion, to defeat the purpose which he had in view in laying out the alley, which was, by the plain language which he used, to devote the alley to the common use of all persons owners of lots bounding upon it, without distinction as to the time at which they acquired their several titles from him. He doubtless foresaw that the large lot which he had conveyed to Hess, and which was bounded on three sides by other ground belonging to himself and on the other side by Fifteenth street, would be cut up into building lots, and that the occupants of houses built upon these lots would have no outlet whatever, except by their front doors, unless by means of the alley intended for the benefit of all owners bordering upon it, and he therefore in the reservation of the way, used language broad enough to secure the right of·user for all owners whose lots bounded upon the alley, and that without regard to the time at which their titles might have been acquired.

"I am therefore clearly of the opinion that the way laid out and reserved by Miller was a way intended to be appurtenant to all the lots bounding upon the alley, whether acquired before or after the alleyway was laid out, and that consequently the defendants have an equal right with the plaintiff to the use of the twelve feet wide alley. The law is well settled that a right of way appurtenant to land is appurtenant to every part of it, and if the owner divides it into several lots, the grantee of each lot, however small, has an equal right over the servient land : Watson v. Bioren, 1 S. & R. 227 ; Underwood v. Carney, 1 Cushing, 285 ; Lansing v. Wiswall, 5 Denio, 218; Myers v. Birkey, 5 Phila. 167 ; Walker v. Gerhard, 9 Phila. 116.

" The plaintiff, having accepted the deeds which reserved the use of the alley for 'all occupiers of lots bounding upon it,' and the Hess lot being one of those which bounded upon it when the alley was laid out and reserved for the common use of all, the plaintiff is estopped from denying the right of the

defendants who derived their title from Hess : Watson v. Bio-ren, 1 S. & R. 227.

" This view of the case renders it unnecessary to consider the effect of the agreements made between Miller and Gunn, dated respectively March 6, 1893, and January 19, 1894, and the conveyance of the soil of the alley by Miller to Taylor January 20, 1894. These papers were evidently made with the view of strengthening the title of defendants—a title which, in my opinion, was good enough before their execution, and did not require their support. I may add that the affirmance of the title of the defendants to the use of the alleyway plainly works no injury to the plaintiff. No one can pretend that the use of the alley by the defendants impairs or injures in any manner the plaintiff's enjoyment of it. The only effect of the decree will be, so far as he is concerned, to prevent him from speculating upon the necessities of his neighbors.

" Ordered that the bill be dismissed, the plaintiff to pay the costs."

*Error assigned* was decree dismissing bill.

*H. B. Gill, John R. Read* and *Silas W. Pettit* with him, for appellant, cited : Kirkham v. Sharp, 1 Whart. 323; Shroder v. Brenneman, 23 Pa. 348; Cope v. Grant, 7 Pa. 488; Commissioners v. Wood, 10 Pa. 93; Ellis v. Academy of Music, 120 Pa. 608; Lewis v. Carstairs, 6 Whart. 193; Canal Co. v. Torrey, 33 Pa. 143; Williams v. Esling, 4 Pa. 486.

*George W. Norris*, for appellees.—This is not an attempt by the defendant to impose an additional burden on the way, or to extend it so as to make it appurtenant to land to which it was not intended to be appurtenant, and therefore differs radically from Kirkham v. Sharp and Lewis v. Carstairs.

PER CURIAM, Feb. 18, 1895 :

The judgment in this case is affirmed on the opinion of the learned court below.